## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JOSEPH LEE<br>303 Lord Willoughby Way<br>Edgewood, MD 21040<br>    Plaintiff<br><br>v.<br><br>EX- EXEC LUBE, LLC t/a JIFFY LUBE<br>10517 YORK ROAD<br>COCKEYSVILLE MD 21030<br><br>    SERVE:<br>    Frank C. Fulco<br>    10517 YORK ROAD<br>    COCKEYSVILLE MD 21030<br><br>And<br><br>RT 40 WEST LUBE, LLC t/a JIFFY LUBE<br>10517 YORK ROAD<br>COCKEYSVILLE MD 21030<br><br>    SERVE:<br>    Frank C. Fulco<br>    10517 YORK ROAD<br>    COCKEYSVILLE MD 21030<br><br>And<br><br>F&C LUBE, LLC, t/a JIFFY LUBE<br>10517 YORK ROAD<br>COCKEYSVILLE MD 21030<br><br>    SERVE:<br>    Frank C. Fulco<br>    10517 YORK ROAD<br>    COCKEYSVILLE MD 21030<br><br>Defendants. | Case Number: _____ |

**COMPLAINT**

Plaintiff, Joseph Lee ("Mr. Lee"), by and through undersigned counsel, hereby submits this Complaint against the above-captioned Defendants, EX- EXEC LUBE, LLC, RT 40 LUBE, LLC AND F&C LUB, LLC, all of which trade jointly and severally as "Jiffy Lube" (hereafter referred to jointly and severally as "JIFFY LUBE" and/or "Defendant") for violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA'"Maryland Wage and Hour Law, MD. CODE ANN., LABOR & EMPLOY. §§ 3-401., et seq. ("MWHL"), the Maryland Wage Payment and Collection Act, MD. CODE ANN., LABOR & EMPLOY. §§3-501, et seq. ("MWPCA"), as set forth below.

**JURISDICTION**

1. Jurisidiction in this matter is proper based on 28 U.S.C. §1331 as the matter raises issues of federal statutory law.

**FACTS COMMON TO ALL COUNTS**

2. Mr. Lee is a citizen and resident of Edgewood, residing at 303 Lord Willoughby Way Edgewood Maryland United States 21040.

3. By participating as named Plaintiff in this action, Mr. Lee consents to prosecute claims against Defendant under the FLSA, MWHL and the MWPCA.

4. Ex- Exec Lube, LLC, RT 40 Lube, LLC and F&C Lube, LLC are all Maryland corporations, with their principal place of business located in Baltimore County, Maryland, and each regularly carries on business in Maryland.

5. On information and belief, Defendant Jiffy Lube operates a group of "Jiffy Lube" franchises under agreement with a national franchisor and provides various types of automotive

mechanical services.

6.  At all times relevant hereto, Jiffy Lube acted in concert for their mutual business benefit and profit to employ Mr. Lee at their various business locations.

7.  Jiffy Lube jointly and severally employed Mr. Lee during the time period running from approximately July 14, 2014 (the "Employment Date") to June 30 2019 ("Termination Date") (the "Employment Period").

8.  Although each of the separately named Defendants comprising Jiffy Lube is a distinct corporate entity within the records of the Maryland State Department of Assessments and Taxation, Jiffy Lube acted jointly for a common profit and severally to employ Mr. Lee at their different locations.

9.  At all relevant time periods, Jiffy Lube operated automotive mechanic facilties at three different locations.

10. At various times during the Employment Period, the Defendants assigned Mr. Lee to work at the different locations.

11. The assignments were based on the collective business needs and profits of Jiffy Lube as a collective entirety.

12. On information and belief, Jiffy Lube shares a common ownership.

13. On information and belief, Jiffy Lube shares common operating and management personnel, centralized recordkeeping and book-keeping, common management facilities and generally shares business resources and personnel.

14. At all relevant times overall management of Jiffy Lube was conducted by a centralized set of decision-makers who visited each of the locations regularly and directly controlled all of the operations of each of the locations toward the goal of maximizing collective

profits for its owners.

16. 15. Mr. Lee was interviewed and hired by the centralized management team that operates Jiffy Lube.

16. At all times relevant hereto, Jiffy Lube was directly responsible for and directly supervised the hiring, firing and supervision of all employees including but not limited to Mr. Lee.

17. At all times relevant hereto, Jiffy Lube was and directly responsible for and through its centralized management team directly supervised setting pay rates for compensation to Plaintiff and for all withholdings and for all other matters related to payment of wages and salaries.

18. At all times relevant hereto, Jiffy Lube was directly responsible for and through its centralized management team supervised the actions its staff and employees at each of its locations.

19. At all relevant times hereto, Jiffy Lube was directly responsible for and through its centralized management team supervised the payment of all wages, salaries and compensation to Mr. Lee, and to all other Jiffy Lube staff and employees.

20. Prior to his employment with Jiffy Lube, Mr. Lee was interviewed by a senior member of the centralized management team (the "Senior Management").

21. Over the approximately 30 years leading up to the interview, Mr. Lee had worked as an automotive mechanice, with a wide variety of experience.

22. At multiple times over the 30 years of his career, Mr. Lee had been certified by the National Institute for Automotive Service Excellence as an automotive mechanic.

23. At the interview, Senior Management advised Mr. Lee that based on his prior

experience and background he would be offered a position with a title of Assistant Manager.

24. At the time of the interview, Jiffy Lube primarily performed oil change and directly related services for automobiles. However, at about the time of the interview, the national franchisor along with Jiffy Lube was rolling out an expansion of their service offerings to include more general automotive repairs and services including a wide variety of mechanical repairs and maintenance.

25. At the time of the interview in 2014, the service expansion had not yet rolled-out to the Jiffy Lube locations but Senior Management advised Mr. Lee about the service expansion and instructed that the roll-out to the Jiffy Lube locations would be imminent in 2015.

26. At the time of the interview, Senior Management offered Mr. Lee that as soon as the expanded service program was implemented at Jiffy Lube, he would be asked to perform mechanic duties in addition to any other duties he might be assigned.

27. Mr. Lee was offered that he would be paid a base salary of $45,000.00 plus 10% commission (the "Labor Bonus") on the labor that he performed as a mechanic once the expanded service program was implemented.

28. In early 2015, the expanded service program was in fact implemented.

29. At the time of implementation, Senior Management visited the location to which Mr. Lee was initially assigned and personally instructed him that he was the only mechanic at that location, that he should sell the expanded services, that he should perform the mechanical work, and that he would be paid the Labor Bonus as agreed.

30. Through and including the date of his termination on June 30, 2019, Mr. Lee performed mechanic duties for Jiffy Lube.

31. Notwithstanding the ascribed job title of "Assistant Manager", Mr. Lee spent most

of his time conducting mechanical work and did very little in the way of management.

32. Mr. Lee was never given responsible for hiring, firing, or disciplining employees at the locations at which he worked.

33. During the entire time of his employment, Mr. Lee was directed to work 11.5 hours per day, five days per week, totaling 57.5 hours per week.

34. Mr. Lee worked 17.5 hours of overtime per week.

35. Mr. Lee was not paid any overtime during the court of his employment.

36. Mr. Lee completed approximately $3,000 per week of labor for which he should have been paid labor bonus.

37. During most of the time of his employment, Mr. Lee was not paid the Labor Bonus he had been promised.

38. Mr. Lee was not an "exempt" employee under applicable law.

39. Jiffy Lube failed to pay Mr. Lee either overtime wages or the Labor Bonus.

40. Defendant's failure to pay Mr. Lee was willful and intentional and not the result of any bona fide dispute.

41. Defendant failed to pay wages as and when due.

## COUNT I
## VIOLATION OF FAIR LABOR STANDARDS ACT (Overtime)

42. Mr. Lee re-alleges each and every allegation set forth in the paragraphs above as if each were set forth herein.

43. The FLSA mandates that an employer must pay employees for each and every hour worked, with payment of 1.5 times the hourly rate for hours exceeding 40 in one week, and that payment must be made as and when due.

44. At all times, Plaintiff an "employee" covered by the FLSA, 29 U.S.C. § 207(a)(l), and Defendants were jointly and severally the Plaintiff's "employer" under FLSA, 29 U.S.C. § 207(a)(2).

45. At Mr. Lee's agreed flat salary of $45,000, the applicable regular hourly rate based upon a regular work year of 2080 hours was $21.63 per hour.

46. Mr. Lee was entitled pursuant to the FLSA to be paid 1.5 times that regular rate for all hours worked over 40 hours per week.

47. The overtime rate for Mr. Lee was 32.45 per hour.

48. Mr. Lee worked 17.5 hours of overtime per week, which should have entitled him to overtime pay equal to $567.87 per week.

49. Between November 5, 2016 through June 30 2019 (the "Damages Period"), Mr. Lee worked 138 weeks.

50. Mr. Lee was entitled to overtime pay for 138 weeks in the base amount of $78,366.06.

51. Jiffy Lube had actual and/or constructive knowledge of all hours worked by Mr. Lee as evidenced by time-keeping records maintained centrally by Jiffy Lube.

52. As set forth above, Jiffy Lube failed and refused to pay 1.5 times regular rate for all hours worked over 40 hours per week.

53. Jiffy Lube's failure and refusal to pay the Plaintiff was not made as the result of any *bona fide* dispute, was willful and intentional and was not in good faith.

54. Mr. Lee is also entitled to liquidated damages in the amount of $78,366.06 for failure to pay overtime wages per the FLSA, and to an award of attorneys fees and costs.

WHEREFORE, Jiffy Lube is liable to Mr. Lee under Count I for the amount of $156,732.12 being comprised $78,366.06 for the overtime wages unpaid, plus $78,366.06 as liquidated damages, plus Jiffy Lube is liable for all other unpaid wages in such amounts as are proven at trial, plus interest (both pre- and post-judgment), plus compensatory damages for lost wages, punitive damages and reasonable attorney's fees, the costs of this action, and any other and further relief this Court deems appropriate.

### COUNT II
**Violation of Maryland Wage & Hour Law (overtime)**

55.    Mr. Lee re-alleges each and every allegation set forth in the paragraphs above as if each were set forth herein.

56.    Mr. Lee was an "employee" and Jiffy Lube was Mr. Lee's "employer" within the meaning of of the MWHL.

57.    Under the MWHL, Jiffy Lube was obligated to pay overtime at the rate of 1.5 times the regular rate for all hours worked in excess of 40 during a work week.

58.    Jiffy Lube failed and refused to pay overtime as required.

59.    Defendant is liable for treble liquidated damages for having failed to pay as agreed.

WHEREFORE, Jiffy Lube is liable to Mr. Lee under Count II for the amount of $235,098.18 being comprised $78,366.06 for the overtime wages unpaid, plus $156,732.12 as liquidated damages, plus Jiffy Lube is liable for all other unpaid wages in such amounts as are proven at trial, plus interest (both pre- and post-judgment), plus compensatory damages for lost wages, punitive damages and reasonable attorney's fees, the costs of this action, and any other and further relief this Court deems appropriate.

## COUNT III
### Maryland Wage Payment Collection Act (Unpaid Wages)

60. Mr. Lee re-alleges each and every allegation set forth in the paragraphs above as if each were set forth herein and additionally and/or in the alternative alleges as set for the below.

61. Mr. Lee was an "employee" of the Defendant pursuant to MD. CODE ANN. LABOR & EMPLOY §3-504 and §3-502.

62. Defendant was obligated to pay to Mr. Lee all wages and Labor Bonuses as and when due for Mr. Lee's work performed.

63. Mr. Lee performed labor services in the amount of approximately 3000 per week.

64. During the Damages Period, Mr. Lee should have been paid a Labor Bonus as promised for 138 week.

65. The total labor for the Damages Period was approximately $414,000.00.

66. Mr. Lee was promised a Labor Bonus of 10%, which means that he should have been paid $41,400.00 in Labor Bonus.

67. Jiffy Lube failed to pay Labor Bonuses as and when due.

68. Jiffy Lube's failure and refusal to pay wages as and when due was not the result of any *bona fide* dispute.

69. Under such circumstances, Mr. Lee is entitled to recover, in addition to the unpaid Labor Bonus, liquidated damages in an amount equal to two times the amount of the unpaid Labor Bonus, as well as attorney's fees and costs.

WHEREFORE, Jiffy Lube is liable to Mr. Lee under Count III for the amount of $124,200.00 being comprised $41,400.00 for unpaid Labor Bonus, plus $82,800.00 as liquidated damages, plus Jiffy Lube is liable for all other unpaid wages in such amounts as are proven at trial, plus interest (both pre- and post-judgment), plus compensatory damages for lost wages,

punitive damages and reasonable attorney's fees, the costs of this action, and any other and further relief this Court deems appropriate.

Respectfully submitted,<br>
HOLZMAN LAW FIRM, LLC

BY:     /s/
Lawrence R. Holzman, #10751
6404 Ivy Lane, Suite 650
Greenbelt, MD 20770
(301) 876-4393
Attorney for Plaintiff

## Jury Demand

Plaintiff requests a trial by jury in these matters.